IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FARMERS INSURANCE COMPANY
OF ARIZONA and FOREMOST INSURANCE
COMPANY,
        Plaintiffs,
v.                                                                               1:15-CV-01089 MCA/KBM

CINDY MARTINEZ, as PERSONAL
REPRESENTATIVE OF THE ESTATE
OF RAYMOND MARTINEZ, Deceased,
        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on a *Motion for Summary Judgment* filed by Farmers Insurance Company of Arizona (FICA) and Foremost Insurance Company (Foremost) (collectively, Plaintiffs). [Doc. 21] The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed. For the following reasons, the Court **DENIES** Plaintiffs' *Motion*.

**I.    Background**

FICA and Foremost filed a *Complaint for Declaration of Rights Under Insurance Policy*, seeking declaratory judgment on "whether, and to what extent, Cindy Martinez, as Personal Representative of the Estate of Raymond Martinez, deceased, is entitled to uninsured motorist coverage under [several] policies" issued by FICA and Foremost. [Doc. 1] Plaintiffs now move for summary judgment to the effect that Raymond Martinez, Sr., Decedent, was not a "resident" of the insured's households and, therefore, not insured under their policies. [Doc. 21]

The parties do not dispute the following facts. Decedent was killed in a motor vehicle accident. His son, Raymond Martinez, Jr., was driving and was uninsured. [Doc. 21, UMF 1-3; Doc. 22, pg. 6] Decedent was married to Concha Martinez (Concha), and had three daughters—Cindy Martinez, Connie Martinez, and Annabelle Martinez—as well as another son. [Doc. 21, UMF 6, 29, 38; Doc. 22, pg. 6] Decedent, Concha, and Cindy lived together in Chimayo, New Mexico. [Doc. 21, UMF 7; Doc. 22, pg. 6] Connie lived with her husband, an aunt-in-law, and one of her children in a mobile home with three bedrooms in Chimayo. [Doc. 21, UMF 9-10, 34; Doc. 22, pg. 6] Annabelle lived with her two children in Velarde, New Mexico, in a three-bedroom house. [Doc. 21, UMF 9-10, 36; Doc. 22, pg. 6]

At the time of the accident, both Decedent and Concha were experiencing poor health. Decedent was receiving dialysis three times each week and traveled to Espanola for the dialysis treatments. [Doc. 21, UMF 28; Doc. 22, pg. 6] Decedent, Concha, and Cindy would stay overnight at either Connie's or Annabelle's home after Decedent received dialysis treatment. [Doc. 21, UMF 29; Doc. 22, pg. 6; Doc. 23, pg. 2] Decedent stayed with each daughter at least one time each week. [*Id.*] When Decedent stayed with Connie or Annabelle, he would sleep in one of their daughters' rooms. [Doc. 21, UMF 33, 35; Doc. 22, pg. 6] Decedent kept some personal items, such as clothes and toiletries, in Connie's and Annabelle's homes. [Doc. 21, UMF 37; Doc. 22, pg. 6] Concha suffered a stroke roughly three months prior to the accident, and after that the frequency of Decedent's stays with Connie and Annabelle grew more "consistent[]." [Doc. 21,

UMF 40, 41; Doc. 22, pg. 6]  However, Decedent and Concha had not made plans to move away from their home in Chimayo.  [Doc. 21, UMF 55-57; Doc. 22, pg. 7]

At the time of the accident, Connie and/or her husband and Annabelle held several insurance policies issued by FICA and Foremost covering various vehicles they owned. [Doc. 21, UMF 15-21; Doc. 22, pg. 6]  The FICA policies included an "uninsured motorist coverage" clause that read

> We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of: (a) bodily injury sustained by the insured person.  The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle . . .
>
> 2. Insured person means:
>
>     a. You or a family member.

[Doc. 21, UMF 23; Doc. 22, pg. 6]  "Family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household."  [Doc. 21, UMF 24; Doc. 22, pg. 6]

Similarly, the Foremost policy included an "uninsured motorist coverage" clause that read

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury": 1. Sustained by an "insured" while "occupying" "your covered auto"; and 2. Caused by an accident . . .
>
> "Insured" as used in this Part means: . . . 2. Any "Family member" while "occupying" "your covered auto".

[Doc. 21, UMF 25; Doc. 22, pg. 6]  "Family member" is defined in the Foremost policy as "a person related to you by blood, marriage or adoption who is a resident of your

household." [Doc. 21, UMF 26; Doc. 22, pg. 6] It is undisputed that Decedent was not a named insured on any of these policies. [Doc. 21, UMF 16, 22] Instead, Cindy, as personal representative of Decedent's estate, sought coverage under the FICA and Foremost policies, asserting that Decedent was an insured under the policies because he was a "resident" of both Connie's and Annabelle's households. [Doc. 21, UMF 27; Doc. 22, pg. 6] FICA and Foremost argue to the contrary that Decedent was not a "resident" of either household and therefore not insured by the policies. [Doc. 21, pg. 1]

## II. Discussion

FICA and Foremost move for summary judgment on the ground that the undisputed facts establish that Decedent never intended to live with Connie or Annabelle and that he did not stay with them with the "degree of regularity" required for residency. [Doc. 21, pg. 12] Further, they argue that the undisputed facts, taken together, are insufficient to establish as a matter of law that Decedent was a resident of either home. [Doc. 21, pg. 13-15]

Generally, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this Rule, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. Initially, the moving party bears the burden of demonstrating the absence of a genuine

issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citation omitted). The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted). If the responding party fails to properly address the movant's assertion of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Here, the facts are largely undisputed, and FICA and Foremost do not argue that the term "resident" as used in the policies is ambiguous. Instead, they posit that a "residence" is "the place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; the house where one's home is; a dwelling house," *Perez v. Health & Soc. Servs.*, 1977-NMCA-140, ¶ 12, 91 N.M. 334, 573 P.2d 689.

[Doc. 23, pg. 6]  Cindy does not contest this definition of "residence" or argue that the term "resident" is ambiguous.  [Doc. 22, pg. 8-11]

Although not characterizing the issue as one of ambiguity, several authorities state that "[t]he words 'residence' and 'resident' have no fixed meaning applicable to all cases, but are used in different and various senses, depending upon the subject-matter." *Perez*, 1977-NMCA-140, ¶ 8 (internal quotation marks and citation omitted); *see Risk Mgmt. Div., Gen. Servs. Dep't of State ex rel. Apodaca v. Farmers Ins. Co. of Arizona*, 2003-NMCA-095, ¶ 10, 134 N.M. 188, 75 P.3d 404 (stating that "the undefined term, 'resident' or 'residence' may be subject to various interpretations depending on the context of the case" and holding that the term "resident" was ambiguous in the context of that case).  Courts have therefore identified several factors pertinent to deciding whether someone is a "resident" of a household.  These include whether the named insured and the person at issue:

> (1) live under the same roof; (2) in a close, intimate, and informal relationship; (3) the intended duration of which is likely to be substantial and consistent with the informality of the relationship; and (4) from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

8 STEVEN PLITT, ET AL., COUCH ON INS. § 114:13 (citations omitted).  Other authorities consider

> the individual's presence in, or absence from, the named insured's home on the date of the occurrence; the reasons or circumstances relating to the presence or absence; the relationship of the individual to the named insured; living arrangements of the individual in earlier time periods; the individual's subjective or declared intent with respect to the place of residence; and the existence of a second place of lodging.

Page **6** of **10**

46 C.J.S. INSURANCE § 1493. The intent of the person seeking coverage to be and remain a part of the insured's household is an important feature of the analysis, and, while that intent "need not be coupled with continuous residence, the intention must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household in order to be a resident for purposes of automobile insurance; casual, erratic contacts are not sufficient." *Id.*; *see Am. Commerce Ins. Co. v. Bachicha*, 256 F. Supp. 2d 1219, 1223-24 (D.N.M. 2003) (stating that intent and regularity are components of the "resident" analysis); *cf. Perez*, 1977-NMCA-140, ¶ 11 (stating that "[t]he question of whether a person is a resident of one place or another is largely a question of intention" in the context of determining state residency (internal quotation marks and citation omitted)).

The overarching question reached by consideration of these factors is one common to all such insurance coverage questions: "whether the parties to the insurance contract intended that coverage would extend to the alleged insured." *Iowa Nat. Mut. Ins. Co. v. Boatright*, 516 P.2d 439, 440 (Colo. App. 1973). In this sense, analysis of these factors coincides with that required to resolve ambiguity in an insurance policy. *See Risk Mgmt. Div.* 2003-NMCA-095, ¶ 11 ("When construing ambiguous contract language, the district court must adopt the interpretation that is most in accord with reason and the probable expectations of the parties." (internal quotation marks and citation omitted).

In answering this question, "the words 'resident of the same household' as contained in an insurance policy do not constitute a term of art which would dictate a particularized legal inference to be drawn from family relationships." *Hardesty v. State*

*Farm Mutual Auto. Ins. Co.,* 382 F.2d 564, 565 (10th Cir. 1967) (internal quotation marks and citation omitted). Instead, whether a person is a "resident" depends on the inferences drawn from the facts, even when those facts are undisputed. *State Farm Mutual Auto. Ins. Co. v. Holloway,* 423 F.2d 1281, 1283 (10th Cir. 1970) (stating that "the inferences to be drawn [from undisputed facts] present[] a fact issue [which is] properly a question normally to be submitted to a jury."). When this is the case, "[t]he [court's] function [is] . . . to submit to the jury consideration of evidentiary facts from which different permissible inferences may be drawn." *Hardesty,* 382 F.2d at 565. Hence, "unless no reasonable trier of fact could infer from the 'totality of the circumstances' revealed by the undisputed evidence that [Decedent] was a resident of [Connie's or Annabelle's] household at the time of the [a]ccident," summary judgment is improper. *Bachicha*, 256 F. Supp. 2d at 1223 (internal quotation marks and citation omitted).

Summary judgment is not proper here. FICA and Foremost point to various undisputed facts and ask this Court infer from them that Decedent had no intention to "reside" with Connie or Annabelle. [Doc. 21, pg. 12-13] For instance, they argue that the daughters' concession that Decedent did not intend to move into Connie's or Annabelle's homes indicates that he did not intend to reside there, or that, because both homes had limited space, "there was not enough room to practically support [Decedent] and Concha . . . on a permanent basis." [Doc. 21, pg. 12-13] Both of these contentions rest on the premise that intention to be a resident requires the intention to be a full-time habitant in those households. But full-time occupancy is not required to be a "resident,"

nor is one required to give up one home to be a resident of another. *See id.* at 1224 (stating that "[a] person does not . . . have to remain physically within the household," and "a person may be a member of more than one household for insurance purposes." (internal quotation marks and citations omitted). Furthermore, FICA and Foremost admit that Decedent was staying with his daughters between eight and ten times per month on days that he received dialysis. [Doc. 23, pg. 2, UMF 29 (admitting that Connie testified that Decedent would stay with her one time per week and "about the same at Annabelle's"); Doc. 23, pg. 2, UMF 39 (admitting that Decedent stayed at Connie and Annabelle's houses four to five times per month)] Cindy testified that Decedent had been receiving dialysis treatment for eight years. [Doc. 21-28, Cindy Depo., 73:22-23] A jury could infer from this frequency and duration an intent to treat Connie's or Annabelle's homes as a "residence" within the meaning of the policies.

FICA and Foremost also point to the fact that Decedent "only began to stay at Connie['s] and Annabelle's homes on a more 'consistent' basis after [Concha's] stroke in March of 2015, which was only three months prior to his death," and that "in the two weeks leading up to the accident . . . , [Decedent] had not stayed in Connie['s] or Annabelle's homes." [Doc. 21, pg. 13] They maintain that these facts show that Decedent's stays in his daughters' homes were not sufficiently regular and that Decedent did not regard their homes as his own. [Doc. 21, pg. 13] But a jury could also infer from these facts that, despite the two-week break, the regularity of Decedent's stays in his daughters' homes had increased in the three months before the accident and would continue to increase as he and Concha aged. Indeed, it is undisputed that within that

three month period Decedent's stays with his daughters had become more frequent. [Doc. 22, pg. 6 UMF 39; Doc. 23, pg. 2, UMF 39; Doc. 21-28, Cindy Martinez Depo. 73:12-76:16] Moreover, it is undisputed that Decedent kept some belongings in both houses, suggesting that he planned to return with some frequency.

Finally, Plaintiffs point to a variety of facts that they maintain demonstrate that Decedent was not a resident of his daughters' homes. [Doc. 21, pg. 14] These include the lack of financial support of Connie's or Annabelle's homes by Decedent and the listing of Decedent's own home address on Decedent's driver's license. [Doc. 21, pg. 14] Although these facts might be considered by a jury as part of a totality of the circumstances, neither is dispositive as to whether Decedent was a "resident" of his daughters' homes for insurance purposes.

In summary, the undisputed evidence permits of a reasonable inference that Decedent was a resident of Connie's and Annabelle's households at the time of his death. Accordingly, summary judgment in favor of FICA and Foremost must be denied.

## III. Conclusion

**WHEREFORE**, for the reasons stated herein, Plaintiffs' *Motion for Summary Judgment* [Doc. 21] is **DENIED**.

**SO ORDERED** this 17th day of July, 2017.

M. CHRISTINA ARMIJO
Chief United States District Judge